```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARL LANE,                      )
                                )
          Plaintiff,            )   Civil Action No. 05-576
                                )
     v.                         )   Chief Judge Ambrose
                                )   Magistrate Judge Caiazza
RICHARD CULP AND R. WASHINGTON, )
                                )
          Defendants.           )
```

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Defendants' Motion for Summary Judgment be granted.

### II. REPORT

Carl Lane ("Lane" or "the Plaintiff"), is a state prisoner incarcerated at the State Correctional Institution at Huntington. He proceeds *in forma pauperis.* Lane alleges that while incarcerated at the State Correctional Institution at Pittsburgh, another prisoner - Inmate Pagan- scattered feces and urine on Lane's cell door, and then pointed to him as the culprit. Lane also alleges that Pagan conspired with Defendant Corrections Officers Culp and Washington to "frame" him, which resulted in the Plaintiff being placed in a "strip cell" for seven days following a misconduct charge. Adding to his claim, Lane alleges deprivations while being housed in the strip cell, including the loss of his eyeglasses, no running water, clothing or bedding, and being fed a "food loaf" diet for seven days. He also alleges

that Defendant Culp conspired with a co-defendant to "frame" him with respect to four inmate grievances filed by Lane dating from November, 2002, through May, 2003. Presently pending is the Defendants' Motion for Summary Judgment. Lane has responded and the Motion is now ready for disposition.

A.   **The Legal Standard**

Lane asserts liability against the Defendants pursuant to the provisions of 42 U.S.C. § 1983. To state a claim under Section 1983, Lane must meet two threshold requirements. He must show: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Also relevant here is the standard of review applicable to motions for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to

judgment as a matter of law. Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (a party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case"). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set out ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)(emphasis added). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

**B.   The Analysis**

    1.   The Conspiracy Claim

To sustain a conspiracy claim under Section 1983, a plaintiff must establish: "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."

Marchese v. Umstead, 110 F. Supp.2d 361, 37 (E. D. Pa. 2000) (citations omitted). In stating his claim, Lane argues that the Defendants, who are corrections officers, conspired with inmate Pagan to "frame" him. Other than his own version of the events supporting his conspiracy theory, Lane has only provided an affidavit in which he states that he filed four grievances over a six month period leading up to the alleged "frame-up" engineered by inmate Pagan and Corrections Officers Culp and Washington. Lane's rendition of the events is insufficient to establish a conspiracy because it does nothing to establish that any communication occurred between Pagan and Defendants Culp and Washington. Recognizing this shortfall, Lane states in his affidavit that inmate Pagan informed Lane that Culp and Washington authored the "frame-up" in retaliation for Lane's grievances. Thus, the sole evidence presented by Lane to support his conspiracy theory is a statement allegedly made to him by Pagan.

To survive summary judgment a party must provide an affidavit which is "made on personal knowledge" and which sets out "facts as would be admissible in evidence" to which "the affiant is competent to testify . . . ." Fed. R. Civ. P. 56(e). Here, the statement Lane attributes to Pagan is classic hearsay; his testimony with respect to this statement would clearly be inadmissible at trial. See, e.g., Beyah v. Coughlin, 789 F.2d

986, 990 (2d Cir. 1986)("Rule 56(e) provides that '[s]upporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence . . .'". Consequently, Lane has established no factual basis to support his conspiracy claim and summary judgment is appropriate.

2. The Retaliation Claim

Lane's claim of retaliation fails because it likewise lacks evidence. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). However, to state a prima facie case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered adverse action at the hands of prison officials; and 3) **his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him**.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir.2002) (internal citation and quotation omitted)(emphasis added). Here, there is no competent evidence which would allow a fact finder to conclude that the placement of Lane in a "strip cell" by the Defendants was an act of retaliation. Again, the evidence offered by Lane is: (1) the four grievances he filed at unspecified times between November, 2002, and May, 2003; and (2) the inadmissible statement in which he claims that inmate Pagan informed him that Culp and Washington authored the frame-up in retaliation for the four

grievances. The lone fact that Lane filed a series of inmate grievances is insufficient to connect the named defendants to a retaliatory motive -particularly when the retaliation was partially based on an act performed by inmate Pagan and Lane's sole evidence supporting his claim is a self-serving, inadmissible statement.

3. The Eighth Amendment Claim

Lane also asserts that he was subjected to cruel and unusual punishment when he was placed in a "strip cell" for seven days following the May 3, 2003 incident. In his affidavit Lane claims that he was provided only a "food loaf", that he was denied running water, clothing, bedding, and a mattress, that he experienced "back pain . . . headaches . . . [and that he suffered from] emotional distress."

Providing an inmate with a food loaf for seven days is not a violation of the Eighth Amendment. See, e.g., Gates v. Huibregtse, 69 Fed. Appx. 326 (7th Cir. 2003); Adams v. Kincheloe, 743 F. Supp. 1385, 1391 (E.D.Wash.1990) (placing inmate on disciplinary five-day diet of "nutra-loaf" did not violate the Eighth Amendment). To the extent Lane argues he was denied the basic human need of sustenance, his claim fails and the Defendants are entitled to summary judgment.

Further, Lane's claim that he was without bedding and running water for seven days is insufficient to establish a

constitutional violation. The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement [and to] ensure that inmates receive adequate food, clothing, shelter, and medical care". Farmer v. Brennan, 511 U.S. 825, 832 (1984)(internal citation and quotation omitted). Farmer teaches that there is an objective and subjective element that must be satisfied; Lane has met neither.

  First, the conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (internal citation and quotation omitted). Also, a plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions –considered alone constitutionally insufficient- may present an Eighth Amendment violation they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." See Wilson v. Seiter, 501 U.S. 294, 304 (1991).

  Second, the subjective element requires a defendant to have a sufficiently culpable state of mind  -defined by case law as showing a "deliberate indifference" to the well-being of an inmate. See Farmer, 511 U.S. at 834. Adopting a subjective

recklessness test, the Farmer court defined the term "deliberate indifference" in the following manner:

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases by condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-40.

Here, Lane specifically alleges that he was denied running water for a period of time, and that he was forced to sleep on the floor without clothing or bedding. "The Constitution . . . does not mandate comfortable prisons." Wilson, 501 U.S. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir.1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)); see also, Castro v. Cheney, No. 97-4983, 1998 WL 767467, at *6 (E.D.Pa. Nov.3, 1998). The court may also consider the extent of any injury actually incurred to determine whether the deprivation is sufficiently serious to implicate the Eighth Amendment's prohibition. Cowans v. Wyrick, 862 F.2d 697, 700 (8th Cir. 1988).

Under the facts here, the denial of bedding for a period of seven days does not rise to the level of a constitutional violation. See Castro, 1998 WL 767467, at *8 ("The Court also finds that Plaintiff's allegation that he was deprived of a mattress and blanket for a period of two days, even if proved, would not rise to the level of a constitutional violation." See also, Stephens v. Cottey, 145 F. App'x 179, 181 (7th Cir. Aug. 11, 2005)(no Eighth Amendment violation exists where prisoner spent three days without a mattress sleeping on a metal bedframe and five days with no bedframe sleeping on the floor); Schroeder v. Kaplan, 60 F.3d 834 (Table), 1995 WL 398878, at *2 n.6 (surveying district courts findings on whether failure to provide a mattress violated the Eighth Amendment and concluding that courts have "reached inconsistent conclusions"). The facts here sway against finding that the failure to provide Lane with bedding for seven days rises to the level of a constitutional violation because of the short time he was housed in the "strip cell" and because he suffered no serious physical harm.

Lane also claims that he was not clothed during this same time frame. Even where clothing is not provided to an inmate for punitive reasons, courts have found no violation of the Eighth Amendment where only minimal injury is alleged, and where other conditions of confinement are humane and sanitary. Rodgers v. Thomas, 879 F.2d 380, 384-85 (8th Cir. 1989). The same result is

reached here, especially after considering the sanitary problems caused by the feces and urine spread on Lane's cell door.

Finally, Lane claims that he was denied running water. "The mere fact that the water in Plaintiff's cell was turned off for a period of days, without more, even if proved by Plaintiff is not sufficient to rise to the level of a constitutional violation." See, Stewart v. Wright, 1996WL6657978 at * 1-2 (7th Ci.r 1996) ("Dry cell conditions such as not being able to flush the toilet or brush teeth are mere inconveniences . . . [I]t is well settled that conditions which are temporary and do not result in physical harm are not actionable under the Eighth Amendment.")

In sum, Lane has asserted conditions he finds unsettling, upsetting and uncomfortable. He has, however, not provided evidence which shows he suffered any objectively verifiable injury for the seven day period he was housed in a "strip cell". Even viewing the record in a light most favorable to Lane, within the context of prison life, Lane has not established that he was denied "the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. Considering his complaints cumulatively, Lane has failed to satisfy the objective standard of the Farmer test.

Furthermore, Lane has provided no evidence, other than inmate Pagan's inadmissable statement, which shows that the Defendants were motivated by ill will. Hence, Lane also has

failed to satisfy the subjective standard of the <u>Farmer</u> test.

    4.   <u>The Due Process Claim</u>

Lane also asserts that he was denied due process because he was placed in administrative confinement without the benefit of a hearing. In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the Supreme Court recognized that under certain circumstances states may create liberty interests protected by the 14th Amendment due process clause. In the prison context, however, "these interests will be generally limited to freedom from restraint . . . which impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484. Prison regulations established primarily as guidelines which serve to govern the administration of a prison, such as those insuring the safety and welfare of other inmates, do not necessarily confer rights upon inmates. <u>Id</u>. at 487. Relevant here, the housing of prisoners in administrative custody is not an event that is atypical in the operation and management of a prison. Nor does it reflect on the length of a prisoner's sentence. Furthermore, in <u>Sandin</u>, because the Plaintiff's confinement in administrative custody did not impose any greater sentence and because it did not subject him to any atypical or significant hardship, no protected liberty interest was implicated. In fact, the placement of an inmate in administrative custody for a period of fifteen months is a sanction not

necessarily atypical or "[un]expected" when considered in the context of prison life. See Griffin v. Vaughn, 112 F.3d. 703, 708 (3d Cir. 1997) and Sandin, at 485-86.

Here, Lane was placed in administrative custody for seven days. On these facts, Lane has suffered no atypical or unexpected condition of confinement and, consequently, has not alleged a deprivation of a liberty interest. The Motion for Summary Judgment should be granted with respect to this claim.

5. The Equal Protection

Lane also asserts that he was denied his right to equal protection because he was not provided with a hearing with respect to the misconduct charge. Responding to this claim, the Defendants argue that Lane has failed to identify any other inmate who was "similarly situated" but was not treated the same. See, City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Lane responds that he is a "class of one".

To succeed on a "class of one" theory, Lane must do more than merely allege he was treated differently. "[A]t the very least, to state a claim under [a 'class of one'] theory, a plaintiff must allege that: (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 240 (3d Cir.2006). Without commenting on the last two

requirements, Lane has not responded to a well-pled motion for summary judgment by showing that he was treated differently from others similarly situated. Parenthetically, Lane was confined in administrative custody because of his confrontation with inmate Pagan – providing the Defendants with a rational basis for placing him in administrative custody for seven days.

### III. CONCLUSION

For the reasons set out in this Report and Recommendation, it is respectfully recommended that the Defendants' Motion for Summary Judgment (Doc. 64) be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 5, 2007. Responses are due by March 15, 2007.

February 14, 2007                 *Francis X. Caiazza*
                                  Francis X. Caiazza
                                  United States Magistrate Judge


cc:
Carl Lane, AS-1293
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112